IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RENÉ BRAVO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil. No. 07-1783-HO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CITY OF HUBBARD, an Oregon public body; DAVID DRYDEN, an individual, and WILLIAM GILL, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff René Bravo brings this action alleging violations of his procedural and substantive due process rights in connection with disciplinary proceedings that resulted in his resignation from

his position as a police officer with the City of Hubbard.[1] Defendants move for summary judgment.

Plaintiff Bravo began service with the Hubbard police department as a reserve police officer in October of 1995 and the City hired him as a full-time officer on March 1, 1996.

Bravo states that he spoke with defendant David Dryden, the Hubbard chief of police, about unionizing the police department around January or February of 2004, and further states that Dryden was not in favor of a union. Bravo also states that around this time, Dryden implicitly threatened Bravo's employment when Bravo inquired about benefits, scheduling and safety. Dryden recalls a conversation with another officer in which that officer (Ken Foht) mentioned that Bravo talked about forming a union around the middle of 2006. Dryden stated that he is glad that the Hubbard police force is not unionized because he has a good relationship with his officers and does not want to see that change.

On January 27, 2007, plaintiff met with other officers to discuss issues related to work schedules and benefits. One of the

---

[1] After the motion for summary judgment was filed, plaintiff filed a motion to amend to add a claim for wrongful discharge. The summary judgment motion only addresses procedural and substantive due process claims. Additionally, the operative complaint does not allege procedural due process, but the parties have fully addressed it in the summary judgment motion. The court will address the procedural due process claim.

2 - ORDER

officers at the meeting raised the issue of benefits with Dryden and asked to restart departmental meetings.[2]

On January 30, 2007, Bravo could not locate a fuel card for a patrol vehicle and sent an e-mail to Dryden regarding the missing fuel card. The card was found in defendant sergeant William Gill's duty bag at about the time Bravo sent the e-mail. On January 31, 2007, officer Ken Foht informed chief Dryden of his concern that Bravo attempted to set-up Gill by reporting the gas card as missing when in fact it had been located at the time the e-mail was sent.

Dryden began an internal investigation by asking Gill to contact witnesses to the event and have them document what they observed. On January 31, 2007, Dryden questioned Bravo about the timing of the e-mail and got one answer that he definitely had sent it before the card was found followed by an answer that he could not remember.[3] Dryden informed Bravo that his integrity was in question and put him on paid administrative leave.

On February 1, 2007, Dryden sent a letter to Bravo formally informing him of his paid administrative leave status. On February

---

[2] Plaintiff states that Dryden recognized this as a topic raised by plaintiff in his desire to form a union, but Dryden denied this in the deposition that plaintiff cites as support. Deposition of David Dryden (attached to #30 as Exhibit B) at p. 28.

[3] Bravo contends that he sent two e-mails on January 30, 2007; the second about another officer agreeing to take Bravo's Sunday shift. There is insufficient evidence regarding the second e-mail. Bravo said he was confused because the second e-mail may have been after the card was found. However, in an interview with the Department of Public Safety Standards and Training, after Bravo resigned, it was noted that Bravo stated he sent the e-mail about the missing fuel card after it was found.

3 - ORDER

1, 2007, Bravo sent a written response to the administrative leave status in which he responds to the concern that he was acting in a malicious way to test sergeant Gill.  On February 5, 2007, Dryden sent a pre-disciplinary hearing letter to Bravo detailing the department policies allegedly violated by Bravo by his action on January 30 and 31, 2007.  The letter requested Bravo to submit information or evidence in response to the charges and informed Bravo that discipline could range from a warning up to termination of employment.

On February 5, 2007, Bravo filed a grievance with the City of Hubbard explaining his side of the missing fuel card story.  Bravo explained that since he was required to re-fuel the patrol car and could not find the fuel card where it was supposed to be, he was covering himself by sending the e-mail and he stated that the fuel card was found after he sent the e-mail.  Bravo also stated that he did find out after the e-mail was sent, that the card was found in sergeant Gill's duty bag and suspected that Gill would not admit he had the card in the wrong place.

A hearing was held on February 7, 2007, in which plaintiff made a presentation and the City Council asked a number of questions.  The Council asked for Dryden's recommendation and Dryden recommended termination.  After conferring in private, the council voted to uphold the administrative suspension and gave Bravo until February 9, 2007 to resign his employment or be terminated.

On February 9, 2007, Bravo resigned after securing a letter from Dryden that Dryden would not disparage Bravo and would only release dates of employment when contacted.

On March 13, 2007, Dryden provided the Department of Public Safety Standards and Training with a copy of the misconduct investigation and asserted that Bravo's actions rose to a level that required revoking his police certification.[4]

A.   Procedural Due Process

The Fourteenth Amendment prohibits depriving "any person of life, liberty, or property, without due process of law." To have a "property" interest entitled to Fourteenth Amendment procedural protection "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Id.

Under ORS § 236.360 a police officer cannot be subject to discipline absent "just cause." Moreover, a public employer who

---

[4]The Department closed the investigation after determining that it probably could not prove that Bravo's conduct fell below the moral fitness standards.

5 - ORDER

intends to take disciplinary action must provide written notice of the charges and proposed discipline and provide the officer with an opportunity to respond at an informal hearing.

In addition to deprivation of a protected property interest, plaintiff must also establish denial of adequate procedural protections. See, e.g., Brewster v. Board of Educ. of Lynwood Unified School Dist., 149 F.3d 971, 982, 983 (9th Cir. 1998). The determination of what procedural protections are adequate depends upon an analysis of the particular case in accordance with the three-part balancing test outlined in Mathews v. Eldridge, 424 U.S. 319 (1976). Orloff v. Cleland, 708 F.2d 372, 378-79 (9th Cir. 1983).

The Court identified the following factors in Mathews:

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 335.

The base requirement of due process is that a person deprived of property be given an opportunity to be heard "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552 (1965). The source of the property interest in this case provides that there must be notice in writing of the charges and proposed discipline and an opportunity to respond at an informal hearing. ORS § 236.360. The Supreme Court has noted that:

6 - ORDER

> The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. See Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267, 1281 (1975). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. See Arnett v. Kennedy, 416 U.S., at 170-171, 94 S.Ct., at 1652-1653 (opinion of POWELL, J.); id., at 195-196, 94 S.Ct., at 1664-1665 (opinion of WHITE, J.); see also Goss v. Lopez, 419 U.S., at 581, 95 S.Ct., at 740. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

The record establishes that plaintiff received a "pre-disciplinary" letter which set forth the police department policy violations plaintiff allegedly made and noted the possible disciplinary measures including termination. The letter was very brief and did not contain an explanation of the evidence against plaintiff. However, the oral exchange with Chief Dryden provided evidence of the charges. Plaintiff responded with a written grievance on the subject with his side of the story.[5]

Pursuant to grievance procedures, plaintiff received a hearing before the City Council within seven days of his grievance. The Council gave plaintiff the opportunity to respond to the charges at the hearing. After plaintiff presented his side of the story, Dryden recommended termination and the Council gave plaintiff the option of

---

[5] Plaintiff also provided a written response in reaction to the administrative leave.

7 - ORDER

resignation or termination.  Plaintiff resigned and no further hearings were conducted on the matter.

Plaintiff contends that the notice was not adequate in that it failed to set out the evidence against him.  Plaintiff also contends that the timing of the hearing, just two days after his grievance, was insufficient due to a lack of detail regarding the charges. Plaintiff also contends that the hearing on the charges did not take place at all because he was told the hearing was about his grievance and not possible termination.

The hearing was for plaintiff's grievance, but the subject of the grievance was the charges that resulted in plaintiff's discipline.  Plaintiff received oral notification of the evidence against him and plaintiff had sufficient time from the date of the oral notice to respond.

Plaintiff also argues that the hearing was not in front of an impartial tribunal because Dryden was just looking for an excuse to get rid of plaintiff because of his desire to unionize and because Dryden had already made up his mind to fire plaintiff before the hearing.  Plaintiff provides little evidence beyond speculation to support his theory.  However, given the minor nature of the infraction and the quick action to suspend and terminate plaintiff, an inference could be drawn that the decision had been made to terminate prior to the hearing.  Plaintiff's theory is also bolstered

by the fact that Dryden's recollection of the hearing was that the Council

> asked me where I was at, and I said I'm still in the process of investigating, but I am near the end of it. And they asked me what my recommendation would be, and I says at this point, I'm leaning toward termination.

Dryden Deposition (attached to #30 as Ex. B at p. 44). Dryden also stated that the council has never gone against his recommendation. Accordingly, the jury could infer that not only was Dryden a decisionmaker, but that he made up his mind before completing his investigation and thus even before the hearing. Such evidence could demonstrate that plaintiff did not receive adequate process. See Matthews v. Harney County, Oregon, School Dist. No. 4, 819 F2d 889, 893-94 (9th Cir. 1987) (voting to terminate then inviting employee in to meeting was insufficient process in that it failed to provide a meaningful opportunity to be heard).[6]

However, plaintiff did have an opportunity to submit his story in writing both in the grievance and in an e-mail to Dryden before the hearing and before the decision was made. Thus, to that extent, it is not clear that plaintiff's rights were violated and thus Dryden is entitled to qualified immunity for his role in plaintiff's

---

[6] Plaintiff also contends that his due process rights were violated because he did not receive a post-termination hearing. Plaintiff relies on Huskey v. City of San Jose, 204 F.3d 893, 900 (9th Cir. 2000), for the proposition that a constructive discharge triggers the requirement for a post-termination hearing. The Huskey court did not note such a requirement, but did imply that a constructive discharge could form the basis of a property deprivation without addressing what process would be due in such a case. In this case, plaintiff resigned and to require an employer to conduct a post-"termination" hearing stretches the due process clause.

9 - ORDER

termination with respect to the procedural due process claim. Dryden did state that he had not made up his mind as to the facts prior to getting the e-mail from plaintiff and that the e-mail confirmed his concerns in that it demonstrated that plaintiff did know that the fuel card had been found prior to plaintiff sending an e-mail indicating it was lost. Dryden Deposition at p. 105.

To defeat a claim of qualified immunity, plaintiff bears the burden of proving not only that both elements of his claim are resolved in his favor, but also that both elements are clearly established in his favor. See Brewster, 149 F.3d at 982. Making a decision to terminate after receiving a written response regarding the employee's side of the story, but before an informal hearing in person is not clearly established as a due process violation. In addition, to the extent plaintiff claims he was really fired for his attempts at organizing a union, the evidence is insufficient given that, at best, it establishes Dryden's knowledge of attempts to unionize back in the beginning of 2004.[7]

B.  Substantive Due Process

"[T]he due process clause includes a substantive component which guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are

---

[7] Plaintiff also named sergeant William Gill as a defendant, but concedes that Gill was not a decisionmaker and thus is entitled to summary judgment on his due process claims.

in themselves constitutionally adequate." <u>Sinaloa Lake Owners Ass'n v. City of Simi Valley</u>, 882 F.2d 1398, 1407 (9th Cir. 1989). The protection afforded by substantive due process only guards against governmental action where "the interference with property rights was irrational or arbitrary." <u>Bateson v. Geisse</u>, 857 F.2d 1300, 1303 (9th Cir. 1988).

The protection from governmental action provided by substantive due process has most often been reserved for the vindication of fundamental rights. <u>See</u> <u>Albright v. Oliver</u>, 114 S.Ct. 807, 812 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."). "[T]he [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this unchartered area are scarce and open-ended." <u>Collins v. City of Harker Heights</u>, 112 S.Ct. 1061 (1992).

Plaintiff must demonstrate the irrational nature of the defendants' actions by showing that they could have had no legitimate reason for the decision. <u>Kawaoka v. City of Arroyo Grande</u>, 17 F.3d 1227, 1234 (9th Cir. 1994). If it is "at least fairly debatable" that the defendants' conduct is rationally related to a legitimate governmental interest, there has been no violation of substantive due process. <u>Id</u>.; <u>see also</u> <u>Sinaloa Lake</u>, 882 F.2d at 1407 ("To establish a violation of substantive due process, the plaintiffs must prove

that the government's action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" (quoting <u>Village of Euclid v. Ambler Realty Co.</u>, 272 U.S. 365, 395 (1926))).

In this case, plaintiff asserts a substantive due process right to be free from arbitrary and capricious action relating to his employment via his right to be free from discipline absent just cause.  This is not the type of protection envisioned by the Supreme Court with respect to substantive due process.  The Ninth Circuit has not held that a public employee may maintain a substantive due process claim based on wrongful termination generally.  See <u>Dias v. Elique</u>, 436 F.3d 1125, 1131, n. 3 (9th Cir. 2006) (declining to decide whether a public employee can maintain a substantive due process claim based on arbitrary and capricious termination of public employment).  Indeed, the Ninth Circuit does limit substantive due process claims in the employment arena.  See  <u>Engquist v. Oregon Dept. of Agriculture</u>, 478 F.3d 985, 997-98 (9th Cir. 2007) (We decline to hold that there is no substantive due process claim for a public employer's violations of occupational liberty, rather, we limit the claim to extreme cases, such as a government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure).

Plaintiff argues that his case involves much more than simple wrongful termination in that Dryden attempted to permanently foreclose plaintiff's access to work as a police officer through charges to the Department of Public Safety Standards and Training. Plaintiff alleges that he has been unable to find employment as a police officer since his resignation. See Engquist, 478 F.3d at 998 (9th Cir. 2007) (government employees have a substantive due process protection against government employer actions that foreclose access to a particular profession).

Plaintiff argues that even if he was testing Gill's integrity by sending an e-mail that the fuel card was missing when he knew it was in Gill's duty bag, the punishment of termination did not fit the crime and was thus arbitrary and capricious. Moreover, plaintiff contends the real reason for the termination was his attempt at union organization.

Although plaintiff claims he is unable to find employment as a police officer, there is no evidence that plaintiff is foreclosed completely. The Ninth Circuit has stated that it is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions make it virtually impossible for the employee to find new employment in his chosen field. Engquist, 478 F.3d at 998. Plaintiff provides no evidence to link defendants' actions to his difficulties finding employment or even how difficult it has been

to gain employment. Plaintiff only notes that he has been unable to find a job other than as a volunteer police officer. Indeed, the Department of Public Safety Standards and Training allowed plaintiff to retain his certification. Moreover, plaintiff offers no evidence that other than the charge to the Department of Public Safety Standards and Training, that defendants communicated concerns over plaintiff's credibility to other potential employers. The motion for summary judgment is granted as to plaintiff's substantive due process claim.

C.  Motion to Strike

Plaintiff moves to strike the motion for summary judgment arguing defendants failed to properly confer before filing the motion. The motion is denied.

CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (#18) is granted in part and denied in part. In addition, plaintiff's motion to strike (#31) is denied.

DATED this __19th__ day of November, 2008.

                                         s/ Michael R. Hogan
                                         United States District Judge