Eric J. Fjelstad, OSB No. 89238
SMITH & FJELSTAD
722 N. Main
Gresham, Oregon 97030
Tel: (503) 669-2242
Fax: (503) 669-2249
E-mail: smithandfjelstad@verizon.net

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| RENÉ BRAVO,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HUBBARD, an Oregon public body; TOM McCAIN; MATT KENNEDY; CHIP ENBODY; ANGIE WHEATCROFT and BRUCE WARNER, individuals,<br><br>Defendants. | Civ. No. CV 07-1783 HO<br><br>AMENDED COMPLAINT<br><br>(Procedural Due Process Violations; Common Law Wrongful Discharge)<br><br>(Jury Trial Requested) |

### NATURE OF THE ACTION

1. This is an action for damages arising from violations of plaintiff's Fifth Amendment due process rights; to correct unlawful employment practices, to vindicate the rights of plaintiff and other similarly situated persons to fair treatment; and to make plaintiff whole. Plaintiff Reno Bravo was terminated from his employment with defendant City of Hubbard as a regular police officer without being afforded constitutionally-mandated procedural due process. Officer Bravo was terminated in retaliation for having engaged in efforts to organize a union within the Hubbard Police Department.

2. This is also a claim for damages for common law wrongful discharge under Oregon law.

/////

/////

PAGE 1 - AMENDED COMPLAINT

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 1343. The court has ancillary or supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. §1391 because the claims arose in the District of Oregon and because Officer Bravo was at all material times a resident of the State of Oregon.

5. The employment practices that Officer Bravo alleges were committed in the District of Oregon.

## PARTIES

6. Officer Bravo is a citizen of the United States and the State of Oregon. Defendant City of Hubbard employed Officer Bravo for about eleven years as a regular police officer. At the time of his discharge, Officer Bravo was Hubbard's most senior patrol officer.

7. Defendant City of Hubbard is a municipality incorporated under the laws of Oregon. Defendant Tom McCain was at material times the mayor of Hubbard and a member of its city council. The remaining named defendants were Hubbard city council members at the material times. Officer Bravo sues all individual defendants in their official and in their individual capacities.

## FACTS

8. Defendant City of Hubbard had threatened Officer Bravo's employment since April 2004 at least twice because Officer Bravo raised topics pertaining to his efforts to unionize the Hubbard police force following a meeting between Officer Bravo and Chief of Police Dryden pertaining specifically to unionization in April 2004.

9. Chief Dryden was apprised of an offsite meeting on January 27, 2007 involving the three regular officers (including Officer Bravo) in which historically union-related topics were discussed. Chief Dryden was made aware that Officer Bravo attended this meeting.

10. Events occurred at work on the evening of January 30, 2007 that led Chief Dryden to

PAGE 2 - AMENDED COMPLAINT

accuse Officer Bravo of being "untruthful" about a trivial matter. Chief Dryden suspended Officer Bravo the next day while he conducted an internal affairs investigation of the situation.

11. On about February 5 2007 Chief Dryden presented Officer Bravo with a "Pre-Disciplinary Hearing Letter" that generally set out the ethical rules upon which Chief Dryden relied in suspending Officer Bravo and informing him that he could be disciplined - including termination - if found to have violated those rules. Officer Bravo filed a grievance on the same day relating to his suspension. Officer Bravo then sought and secured a hearing regarding his grievance only at an open city council session on February 7, 2007.

12. Officer Bravo was allowed to present his outline of his grievance at the open city council session. The council then asked Officer Bravo numerous questions unrelated to the grievance. The council then went into executive session and, when it reopened the session, announced that it was upholding Chief Dryden's suspension of Officer Bravo. The council then asked Chief Dryden what additional discipline he felt was warranted, to which Chief Dryden responded, "immediate termination." The council then advised Officer Bravo that he had 48 hours to submit his resignation or he would be terminated from his position. The official reason for Officer Bravo's termination was "untruthfulness." The council had always agreed with Chief Dryden's personnel recommendations and Chief Dryden had let it be known that he would push for Officer Bravo's termination prior to the council meeting.

13. On February 9, 2007 Officer Bravo sought a letter from Chief Dryden in which the chief agreed not to disparage Officer Bravo or the reason that he left Hubbard's employ. Chief Dryden authored such a letter.

14. Officer Bravo sent the City of Hubbard a tort claim notice on February 27, 2007. The notice set out the brief facts and named the city council members as potential defendants in a contemplated lawsuit.

15. Chief Dryden contacted the Department of Public Safety Standards and Training and informed it that Officer Bravo had resigned in lieu of termination, arising from a situation in

PAGE 3 - AMENDED COMPLAINT

which he had been found untruthful. Chief Dryden sought decertification of Officer Bravo
through DPSST. DPSST eventually dismissed the charge.

## FIRST CLAIM FOR RELIEF

(Procedural Due Process Violation - 42 U.S.C. § 1983)

16. Officer Bravo incorporates the allegations contained in paragraphs 1 through 15
above.

17. Defendants failed to provide Officer Bravo with an unbiased decision maker as
required by the Due Process Clause of the Fifth Amendment. Defendants in this manner deprived
Officer Bravo of his Fifth Amendment due process rights.

18. Defendants' actions were taken under color of state statute, regulation, custom, policy
and/or usage in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 in that they denied
Officer Bravo's procedural due process rights. Defendants' actions were intentional, reckless or
deliberately indifferent.

19. As a result of defendants' actions, Officer Bravo has suffered and will continue to
suffer lost wages and benefits of employment in an amount to be proved at trial. Such economic
losses to date total at least $70,000.

20. As a further result of defendants' actions, Officer Bravo has suffered severe emotional
distress, including but not limited to anxiety, frustration, anger, fear, a sense of stigmatization,
embarrassment and sleeplessness. Officer Bravo seeks $500,000 as compensation for his
noneconomic harm.

21. Defendants' actions were taken with an intentional or reckless disregard for Officer
Bravo's constitutional rights. He seeks $1,000,000 in punitive damages from defendants to deter
future such abusive tactics.

22. Officer Bravo is entitled to recover his reasonable attorney fees and litigation costs
pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

/////

PAGE 4 - AMENDED COMPLAINT

## SECOND CLAIM FOR RELIEF

### (Common Law Wrongful Discharge)

23. Officer Bravo incorporates the allegations contained in paragraphs 1 through 15 and 24 above.

24. Defendants discharged Officer Bravo because defendant Dryden did not want any further union organizational activities in the Hubbard Police Department. The right to engage in concerted, union-organization activities without fear of suffering adverse employment consequences is an important societal right as recognized by federal and state law. Such right was directly related to Officer Bravo's status when he was employed by defendants.

25. As a direct result of his unlawful discharge, Officer Bravo has suffered the economic damages and noneconomic set forth in paragraphs 19 and 20 above.

26. Defendants' conduct toward Officer Bravo was intentional, or in reckless disregard of his established employment rights. Officer Bravo seeks punitive damages to deter defendants from engaging in future such conduct in the amount of $1,000,000.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests the court to:

1. Assume jurisdiction over the cause of action set forth above.

2. Order defendants to make plaintiff whole by paying his economic losses in an amount to be proved at trial, but not less than $70,000.

3. Order defendants to further make plaintiff whole by paying him noneconomic damages in the amount(s) requested in the complaint.

4. Award plaintiff punitive damages in the amount(s) sought in the complaint to deter defendant from engaging in similar abusive conduct in the future.

5. Award plaintiff his litigation costs and his reasonable attorney fees, costs and expert witness fees pursuant to 42 U.S.C. §§ 1983 and 1988.

6. Order defendant to pay prejudgment and postjudgment interest on all amounts due to

PAGE 5 - AMENDED COMPLAINT

plaintiff as a result of this action.

7. Order such further or alternative relief in favor of plaintiff as the court deems just, equitable and appropriate.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this complaint.

Dated January 19, 2009.

SMITH & FJELSTAD


By:_____s:/Eric J. Fjelstad_____
Eric J. Fjelstad, OSB #89238
Of Attorneys for Plaintiff René "Reno" Bravo
Tel. No: (503) 669-2242

PAGE 6 - AMENDED COMPLAINT